**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**GARDEN STREET IRON & METAL, INC.**    :
2815 Spring Grove Avenue                         CASE NO. **1:12cv147**
Cincinnati, OH 45225                          :
                                                              JUDGE:  **Michael R. Barrett**
          **and**                                    :

**STEVEN WAYNE JACOBS**            :    <u>**SECOND AMENDED**</u>
22 Griess Drive                                      <u>**COMPLAINT WITH**</u>
Demossville, KY 41033                        :    <u>**JURY DEMAND**</u>

          **Plaintiffs,**                           :

**v.**                                                       :

                                                              :

**CITY OF CINCINNATI, OHIO**           :
c/o Milton Dohoney
801 Plum Street                                   :
Cincinnati, OH 45202                           :

          **Defendant.**                          :

          Co-plaintiffs, Garden Street Iron & Metal, Inc. and Steven Wayne Jacobs, by

counsel, for their Complaint against defendant, City of Cincinnati, state as follows:

<u>**NATURE OF CASE**</u>

          1.      This is an action for violations of the United States Constitution and the

Ohio State Constitution.

<u>**DESCRIPTION OF THE PARTIES**</u>

          2.      Co-plaintiff, Garden Street Iron & Metal, Inc. ("Garden Street"), is an

Ohio corporation with its principal place of business located in Cincinnati, Ohio.

          3.      Co-plaintiff Steven Wayne Jacobs ("Jacobs"), is a citizen and resident of

Kentucky who has engaged in interstate scrap-vending commerce with co-plaintiff

Garden Street for approximately 10 years.

4.      Defendant, City of Cincinnati, is a municipal organization located in Hamilton County, Ohio.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because claims in this action arise under the laws of the United States, namely the United States Constitution.

6.      Under 28 U.S.C. § 1367, this Court has ancillary jurisdiction over remaining state law claims, which are so related to the claims arising under federal law that they form a part of the same case or controversy.

7.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332 as it involves an amount in controversy over $75,000 and is between citizens of different States.

8.      Venue is appropriate in this Court under both 28 U.S.C. § 1391(b)(1) and (2) because the acts giving rise to the causes of action occurred, and parties to this litigation are located, within the boundaries of the Southern District of Ohio.

## FACTUAL BACKGROUND

9.      On February 15, 2012 defendant passed Ordinance Number 30-2012, document number 201200237 (attached hereto as **Exhibit A**), which requires vendors of scrap metal to apply for and receive a license from the City Manager's office before he or she can engage in scrap metal purchases, sales, and other economic activity.

10.      The application required in order to obtain a license to sell scrap metal requires that an individual submit to a criminal background check and requires that the applicant have no prior "theft related convictions" before issuance of a permit.

11.    Defendant's Ordinance also requires scrap metal purchasers to engage in additional and burdensome recordkeeping requirements as they relate to fingerprinting and documenting of vendors.

12.    Assuming the City Manager's office chooses to grant an individual a permit to sell or purchase scrap, the grantee must furnish the city with not less than $25 and not more than $400 before he or she may engage in scrap metal-related commerce.

13.    Co-plaintiff Garden Street has continuously engaged in interstate commerce with scrap metal vendors who are citizens and residents of Kentucky and Indiana and who reside many miles away from the Cincinnati city limits.

14.    Garden Street's ability to continue to engage in interstate commerce with out of state vendors will be substantially frustrated by defendant's newly enacted City Ordinance due to the additional cost burdens, time constraints, and inefficiency associated with the Ordinance's enforcement.

15.    Co-plaintiff Garden Street also regularly receives scrap metal by rail transportation and transports scrap metal by barge transportation through the rail yards and barge terminals of Cincinnati and the Ohio River. Loss of such interstate vendors of scrap metal to the Garden Street facilities will adversely affect interstate movement of scrap, without due regard for the adverse effects on such interstate commerce.

16.    Co-plaintiff Jacobs, a Kentucky citizen resident, has repeatedly engaged in interstate commerce with co-plaintiff Garden Street for a period of 10 years.

17.    Co-plaintiff Jacobs' ability to continue to engage in interstate commerce with Garden Street will be substantially frustrated by defendant's newly enacted City Ordinance, as he is not familiar with the location where one can apply for and receive a license (a location which is different than Cincinnati City Hall); and there are other

businesses within Kentucky, Indiana, and outside of the Cincinnati city limits which will purchase Jacobs' wares for cash, without the requirement of a vending license, and without the burdensome background checks imposed by defendant's Ordinance.

18.     Defendant's newly enacted City Ordinance, which inhibits the interstate sale of scrap metal, is not the least burdensome means of serving the City's stated public purpose.

19.     The Ohio General Assembly recently enacted Amended Substitute Senate Bill 193 ("Senate Bill 193"), concluding that scrap metal sales and purchases require state dominance and clearly expressing its intent to preempt any local regulation of the scrap metal industry; Senate Bill 193 will be effective on September 28, 2012 and will be known as O.R.C. § 4737.044.

## COUNT I
## (VIOLATION OF UNITED STATES CONSTITUTION)

20.     Co-plaintiffs hereby incorporate the preceding paragraphs as if fully restated herein.

21.     Co-plaintiff Jacobs lives in DeMossville, Kentucky and has regularly sold scrap metal to co-plaintiff Garden Street each week for a period of 10 years.

22.     Co-plaintiff Garden Street wishes to continue purchasing scrap metal from co-plaintiff Jacobs and competes with other businesses who wish to purchase the same items.

23.     Co-plaintiff Jacobs has a right to sell scrap inside Kentucky without the additional burdens of increased cost, travel time, and submission to a background check – all of which are associated with obtaining a license to sell scrap in Cincinnati.

24.    As a result of defendant's Ordinance, co-plaintiff Jacobs, and other out of state vendors, will no longer do business with Garden Street and will take scrap items to purchasers located within Kentucky, Indiana, or outside of the Cincinnati city limits.

25.    Congress enacted the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq*., a federal statute.

26.    Interstate movement of recyclable "scrap" metals is loosely regulated under the federal Resource Conservation and Recovery Act ("RCRA"), Subtitle D, with extensive federal encouragement of commerce in recycled goods moved for a commercially valuable purpose.

27.    Because there is no express federal preemption clause in RCRA covering the scrap recycling industry, Dormant Commerce Clause jurisprudence applies to this matter.

28.    The United States Supreme Court's jurisprudence, and associated case law discussing the Dormant Commerce Clause, requires defendant to show that its local licensing scheme, burdensome background checking, and prohibition on cash transactions produce a local benefit which substantially outweighs its blatant interference with interstate commerce.

29.    Alternative means of combating defendant's stated public interest are less intrusive on Kentucky and other out of state vendors; and such alternative means have been repeatedly suggested to defendant prior to the enactment of the Ordinance complained of herein.

30.    Moreover, before defendant enacted the Ordinance in question, Cincinnati city officials already had legal means through which they could protect defendant's stated

public interest.  If given a high enough priority within the Cincinnati Police Department, these requirements for purchasing and selling scrap were adequate on their face before the defendant enacted Ordinance Number 30-2012.

31.     Defendant's failure to enforce its existing laws is not a valid rationale for imposing the additional city requirements complained of herein.

32.     The burden imposed on interstate commerce by defendant's Ordinance is clearly excessive in relation to the putative local benefits.  Interstate waste transporters can be subjected to local controls only when the rules address local concerns and merely incidentally burden interstate commerce.

33.     Co-plaintiffs will suffer significant and irreparable economic harm and will be substantially inhibited from engaging in interstate commerce as a result of defendant's unconstitutional Ordinance.

## COUNT II
## (VIOLATION OF OHIO STATE CONSTITUTION)

34.     Co-plaintiffs hereby incorporate the preceding paragraphs as if fully restated herein.

35.     Ohio Revised Code ("O.R.C.") § 4743.044 provides that no municipal corporation or other political subdivision shall enforce any regulation that is in conflict with sections 4737.01 to 4737.043 of the Revised Code; and no municipal corporation or other political subdivision shall enact or enforce a regulation or ordinance applicable to a scrap metal dealer requiring a scrap metal dealer to individually identify and retain any scrap metal purchased or received.

36.     The clear intention of the Ohio legislature was to take exclusive control over scrap metal transactions to assure uniformity throughout the state, facilitate

cooperative law enforcement collaboration though use of a unified system, and to keep all yards in a highly competitive market place on a level playing field.

37.     The Home Rule Amendment to the Ohio Constitution authorizes municipalities to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws; exclusive state power is retained in those areas where state dominance seems to be required.

38.     The Ohio General Assembly has enacted Amended Substitute Senate Bill 193 ("Senate Bill 193"), concluding that scrap metal sales and purchases require state dominance and clearly expressing its intent to preempt any local regulation of the scrap metal industry.

39.     The Ohio General Assembly enacted Senate Bill 193 with the intent to exclusively regulate a matter of state-wide concern, and this intent is corroborated with the adoption of a provision assuring state preemption of all local laws; this provision expressly recognizes "the need for uniform commercial practices across this state."

40.     Defendant's Ordinance violates the Home Rule Amendment to the Ohio Constitution, as Ohio General Assembly has pre-empted all local laws in the area of scrap metal sales and purchases by enacting Senate Bill 193.

41.     Defendant's Ordinance cannot stand alone because it is pre-empted and subsumed by the adoption of Senate Bill 193, rendering invalid any asserted rationale for separate local controls on interstate transactions.

42.     The City Ordinance enacted by defendant violates the preemption provisions of O.R.C. § 4737.044, first sentence, by requiring redundant and conflicting paperwork and limitations on sale transactions which are already incorporated into an

existing law of uniform statewide applicability.  Appropriate balancing of local needs with the rights of vendors in interstate commerce has been implicitly accomplished through the Ohio Legislature's adoption of the set of statewide controls.  The preempted action by the City disadvantages Kentucky and Indiana residents by discouraging them from sales into one sub-set of Ohio purchasers, specifically to Cincinnati purchasers such as plaintiff Garden Street.

43.     Section 843-3 (a), (b), and (c) of the defendant's Ordinance creates a new licensing scheme for persons selling scrap to licensed scrap metal processors in Cincinnati.  As such, it creates a precondition to entering into a scrap metal transaction with a scrap metal processor.  Section 843-3 (a), (b), and (c) of defendant's Ordinance on its face conflicts with state law, Ohio Rev. Code 4737.01 *et seq.*,  which promotes intra-state and inter-state commercial activity; and the City Ordinance undermines the interstate commerce efforts of co-plaintiffs in their interstate business. The City Ordinance conflicts with the statewide statutory system, adding a redundant and inconsistent layer of controls.  The City Ordinance has the consequence of diverting scrap metal transactions to jurisdictions outside of Cincinnati beyond the City's jurisdiction, thereby frustrating its ostensible purpose to aid theft-enforcement efforts of Cincinnati Police.

44.     Especially after the adoption of the state statutory controls, the City Ordinance artificially and without local need differentiates between scrap dealers inside and outside Cincinnati, creating an unequal interstate commerce position, denying equal protection of the laws, and artificially distorting the costs that participants must endure to remain in the marketplace for interstate scrap metal transactions.

45.    Section 84-13 (a-3), (a-7), and (a-9) of defendant's Ordinance creates additional requirements on transaction-recordkeeping in direct violation of Ohio law as they pertain to thumb prints, description of scrap metal purchased, and reporting the consideration for the purchased material.  These additional requirements are preempted by Ohio law  because they differentiate between dealers inside and outside of Cincinnati and create additional burdens on transactions made within the city limits.

**WHEREFORE**, co-plaintiffs, Garden Street Metal & Iron, Inc. and Steven Wayne Jacobs, pray for the following relief:

(A)  Injunctive and declaratory relief;

(B)  Compensatory damages in an amount to be proven at trial;

(C)  Costs and attorney fees;

(D)  Pre-judgment and post-judgment interest;

(E)  A trial by jury; and

(F)  Any and all other relief to which plaintiffs are entitled.

Respectfully submitted,

/s/  Pierce E. Cunningham
Pierce E. Cunningham (0025233)
PIERCE E. CUNNINGHAM CO., LPA
441 Vine Street; 3500 Carew Tower
Cincinnati, OH 45202
Phone: (513) 361-0100
Fax: (513) 361-0110
Email: pcunningham@fuse.net
*Attorney for Co-Plaintiffs*

Prof. James T. O'Reilly (0030674)
24 Jewett Drive
Cincinnati OH 45215
Phone: (513) 708-5601
Email: joreilly@fuse.net
*Of Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was delivered via CM/ECF on the 5th day of September, 2012 to Terrance A. Nestor and Catherine E. Howard, counsel for Defendant.

/s/  Pierce E. Cunningham

EXHIBIT A

CINCINNATI CITY ORDINANCE NUMBER 30-2012

# City of Cincinnati



Interdepartment
Correspondence Sheet

February 7, 2012

To:        Councilmember Cecil Thomas

From:      John P. Curp, City Solicitor

Subject:   Ordinance – Modifying CMC Chapter 843, "Junk Dealers and Second-Hand Dealers" – B Version

Transmitted herewith is an ordinance captioned as follows:

**MODIFYING** the provisions of Chapter 843, "Junk Dealers and Second-Hand Dealers," of the Cincinnati Municipal Code for the purpose of clarity and improving enforcement of scrap metal sales and purchases by ENACTING new Sections 843-1-J2, "Junk Dealer," 843-1-S6, "Scrap Metal Vendor," 843-8, " Notice Required," 843-14, "Additional Requirements for Scrap Metal," 843-15,"Special Purchase Articles," and 843-17, "Severability;" by AMENDING Sections 843-1-F, "Fence," 843-1-M, "Scrap Metal," 843-3, "License Required," 843-5, "License Fees," 843-7, "Fence Required," 843-13, "Records of Transactions," and Section 843-99, "Penalties;" by AMENDING and renumbering Section 843-15," Appeals," and by REPEALING Section 843-99-B, "Penalties."

JPC/KAM/(jk)
Attachment
11836-12

{00017980-1}

17S-6  ☐ FVU

# City of Cincinnati

## An Ordinance No._____ - 2012



KAM/

**MODIFYING** the provisions of Chapter 843, "Junk Dealers and Second-Hand Dealers," of the Cincinnati Municipal Code for the purpose of clarity and improving enforcement of scrap metal sales and purchases by ENACTING new Sections 843-1-J2, "Junk Dealer," 843-1-S6, "Scrap Metal Vendor," 843-8, " Notice Required," 843-14, "Additional Requirements for Scrap Metal," 843-15,"Special Purchase Articles," and 843-17, "Severability;" by AMENDING Sections 843-1-F, "Fence," 843-1-M, "Scrap Metal," 843-3, "License Required," 843-5, "License Fees," 843-7, "Fence Required," 843-13, "Records of Transactions," and Section 843-99, "Penalties;" by AMENDING and renumbering Section 843-15," Appeals," and by REPEALING Section 843-99-B, "Penalties."

WHEREAS, Council finds it necessary to modify Chapter 843, "Junk Dealers and Second-Hand Dealers," in the Cincinnati Municipal Code for purpose of clarity and improving enforcement of scrap metal sales and purchases; now, therefore,

BE IT ORDAINED by the Council of the City of Cincinnati, State of Ohio:

Section 1. That Section 843-1-F, "Fence," is hereby amended as follows:

### Section 843-1-F. – Fence.

"Fence" shall mean a barrier at least six feet but not more than ten ~~10~~ feet in height, which is either comprised of plantings or natural objects, or constructed of any non-transparent material, approved by the director of ~~buildings and inspections~~ planning and buildings, or its successor department, of the city of Cincinnati, and created and maintained so as to substantially obscure the junk located within or upon the premises of the junk yard from the ordinary view of persons passing upon any public street or highway located within the city of Cincinnati.

Section 2. That existing Section 843-1-F of the Cincinnati Municipal Code is hereby repealed.

Section 3. That new Section 843-1-J2 is hereby enacted as follows:

### Section 843-1-J2. - Junk Dealer.

"Junk Dealer" shall mean any person who buys, sells, barters, or trades junk, or who owns or operates a junk yard, except persons who are scrap processors as defined in Section 843-1-S1 or scrap purchasers as defined in Section 843-1-S4.

Section 4. That Section 843-1-M of the Cincinnati Municipal Code, "Scrap Metal," is hereby amended as follows:

**Section 843-1-M. - Scrap Metal.**

"Scrap metal" shall mean any scrap article or material composed of iron, steel or nonferrous metal ~~or metal alloy~~, including but not limited to copper, ~~brass, bronze, aluminum or stainless steel~~, air conditioner parts, and catalytic converters. Aluminum cans do not constitute "Scrap Metal" for the purpose of this chapter.

Section 5. That the existing Section 843-1-M of the Cincinnati Municipal Code is hereby repealed.

Section 6. That new Section 843-1-S6, "Scrap Metal Vendor," is hereby enacted as follows:

**Section 843-1-S6. - Scrap Metal Vendor.**

"Scrap Metal Vendor" shall mean any person that sells or barters any type of scrap metal.

Section 7. That Section 843-3 of the Cincinnati Municipal Code, "License Required," is hereby amended as follows:

**Section 843-3. - License Required.**

(a) General Restrictions

No person shall act as a second-hand dealer, ~~or~~ scrap processor, scrap metal purchaser or scrap metal vendor, or shall operate or maintain a junk yard, second-hand store, or scrap metal processing facility within the city limits of Cincinnati without first obtaining from the city ~~treasurer~~ manager or the city manager's designee a license to act as a scrap processor, ~~or~~ second-hand dealer, ~~or to operate a junk yard, for each junk yard, second hand store or scrap metal processing facility operated by such person~~ scrap metal purchaser, scrap metal vendor, or junk dealer except that auctioneers duly licensed under the provisions of Chapter 811, Cincinnati Municipal Code, need not obtain a second-hand dealer's license under the provisions of the chapter.

If, at any time, the license of a junk dealer, second-hand dealer, scrap metal purchaser or processor, or scrap metal vendor shall be forfeited or revoked or the holder of such a license shall be found to be or have been in violation of any of the ordinances and

2

statutes, at least one year shall elapse before another license or permit for a junk dealer, second-hand dealer, scrap metal purchaser or processor, or scrap metal vendor, may be issued to the holder or to any individual associated with a corporation which applied for and received the license, if the holder is a corporation.

Nothing in this section is intended to apply to the sale or purchase of aluminum cans.

(b) License Requirements for Scrap Metal Processors and Scrap Metal Purchasers

Before an original license is issued under this chapter, the person seeking the license shall make application therefore with the city ~~treasurer~~ manager or city manager's designee, and shall attach to the application an accurate plot plan of the area, showing the actual shape and dimensions of the lot or area to be used, and shall provide any other additional information that may be requested by the city ~~treasurer, city engineer~~ manager or city manager's designee or director of ~~buildings and inspections~~ planning and buildings, or its successor department in determining whether the applicant should be granted the requested license. An application shall be approved by ~~the city engineer and~~ the director of ~~buildings and inspections~~ planning and buildings and the city police, or their respective successor departments, prior to granting and shall show that the applicant has complied with all city ordinances and rules and state laws regarding sales and purchasing of scrap metal, licensing, zoning, drains, signs, driveways, fencing and barrier curbs~~.~~ , and has not, in the last 10 years, been convicted of a theft or theft-related crime. ~~Approval by the city engineer and the director of buildings and inspections will not be necessary for the renewal of any license issued under this chapter. However, t~~The city ~~treasurer~~ manager or city manager designee shall be empowered to suspend, ~~or~~ revoke, or deny reissuance of any existing license when it is shown through an investigation by the city police or planning and building departments, or their respective successor departments, that the licensee has not complied with all city ordinances and rules, and state laws regarding sales and purchasing of scrap metal, records of transactions, zoning, drains, signs, driveways, fencing, and barrier curbs~~.~~, or that the licensee has since been convicted of a theft or theft related crime.

(c) License Requirements for Scrap Metal Vendor

Before an original license is issued under this chapter for a scrap metal vendor, the person seeking the license shall make application therefore with the city manager or city manager's designee. An eligible applicant must have a verifiable permanent home address, which is to be listed on the vendor's license, if issued. An application shall be reviewed by the city police prior to granting the license, and shall show that the applicant has no prior theft related convictions. Review by the city police will not be necessary for the renewal of a scrap metal vendor's license. However, the city manager or city manager's designee shall be empowered to suspend, revoke, or deny reissuance of any existing license when it is shown through an investigation by the city police, the city income tax department, or their respective successor department, that the licensee has not complied with all city ordinances and rules and state laws regarding the sale of scrap

3

metal or scrap metal related income tax, or that the licensee has been convicted of a theft related crime.

This section does not apply to any exemptions set forth in Ohio Revised Code Section 4737.043.

(d) License Requirements for Second-Hand Dealers and Junk Dealers

Before an original license is issued for a second-hand dealer or junk dealer, the person seeking the license shall make application therefore with the city manager or city manager's designee.  If the dealer owns or operates a store, facility, or yard, the dealer shall attach to the application an accurate plot plan of the area, showing the actual shape and dimensions of the lot or area to be used, and shall provide any other additional information that may be requested by the city manager or city manager's designee or director of planning and buildings, or their respective successor department, in determining whether the applicant should be granted the requested license. An application shall be approved by the director of planning and buildings and the city police, or their respective successor departments, prior to granting and shall show that the applicant has complied with all city ordinances and rules and state laws regarding sales and purchasing, duties of dealers, licensing, zoning, drains, signs, driveways, fencing and barrier curbs. The city manager or city manager's designee shall be empowered to suspend, revoke, or deny reissuance of any existing license when it is shown through an investigation by the city police or planning and building departments, or their respective successor departments, that the licensee has not complied with all city ordinances and rules and state laws regarding sales and purchasing, duties of dealers, licensing, zoning, drains, signs, driveways, fencing, and barrier curbs.

Under no circumstances shall any license to operate a junk yard be issued or renewed until the fencing requirements section forth in Section 843-7 of this chapter have been met and the fence has, after completion, received final approval by the director of ~~buildings and inspections~~ planning and buildings or its successor department.  No license to operate a junk yard shall be renewed if, in the opinion of the director of ~~buildings and inspections~~ planning and buildings or its successor department, the premises are not adequately fenced pursuant to Section 843-7 of this chapter.  Anyone who operates a motor vehicle salvage lot on the same premises and who has obtained a license therefore shall not be required to also obtain a license under this chapter.

Section 8.  That the existing Section 843-3 of the Cincinnati Municipal Code is hereby repealed.

Section 9.  That Section 843-5, "License Fees," is hereby amended as follows:

4

**Section 843-5. - License Fees.**

The annual license fee to be paid to the city ~~treasurer~~ manager or city manager's designee by any person acting as a junk dealer, second-hand dealer, scrap processor, ~~or operating or maintaining a junkyard, second-hand store or scrap metal processing facility,~~ scrap metal purchaser, or scrap metal vendor shall be as follows:

Scrap processor or scrap metal purchaser:
$400.00 for each scrap metal processing facility.

Scrap metal vendor:

Class 1:  Scrap metal vendors who make $25,000 or more in annual gross sales shall pay $400.00.

Class 2:  Scrap metal vendors who make less than $25,000 but more than $10,000 in gross annual sales shall pay $200.00.

Class 3:  Scrap metal vendors who make less than $10,000 in gross annual sales shall pay $100.00.

If an applicant for a Class 2 or Class 3 license fails to provide the city manager or city manager's designee with sufficient evidence that the annual gross sales are within the monetary guidelines set forth above, the city manager or city manager designee shall assess the applicant the Class 1 license fee. The first time that an applicant applies for a scrap metal vendor license, the person shall be considered a Class 3 licensee.

Class 4:  Scrap metal vendors who make less than $10,000 in gross annual sales may apply, free of charge, for a temporary permit, which will be valid two (2) days during the calendar year.  The two (2) days of usage may be chosen at the time of licensure by the temporary licensee.

The scrap metal vendor license does not apply to any exemption set forth in O.R.C. 4737.043.

Junk dealer:

Class 1: Junk dealers having a store, stand or other place of business at which ~~more than~~ $25,000 or more in annual gross sales are made, $400.00 for each store, stand or place of business.

Class 2:  Junk dealers having a store, stand or place of business at which less than $25,000 in annual gross sales are made, $200.00 for each store, stand or place of business. If an applicant for a Class 2 license fails to provide the city ~~treasurer~~ manager or city manager's designee with sufficient evidence that the annual gross sales are less

than $25,000, the city ~~treasurer~~ manager or city manager's designee shall assess the applicant the Class 1 license fee.

Class 3: Junk dealers operating from trucks, wagons, or other vehicles, except pushcarts, $60.00 for each such truck, wagon, or other vehicle.

Class 4: Junk dealers operating from pushcarts, $10.00 for each such pushcart.

Class 5: Junk dealers required to have a junk facility license pursuant to Chapter 1021 of the Cincinnati Municipal Code shall obtain its license from the health commissioner upon the payment of a license fee for the calendar year of $40.00.

If the premises are operated as both a junkyard and a motor vehicle salvage lot, the combined annual gross sales for both operations shall determine the license fee to be assessed.

Second-hand dealer:

Class 1: For any ~~church,~~ charitable, civic or welfare organization conducting a rummage sale of articles contributed by its members and friends, for a period of not more than three days, and not more than twice in any one year, the license fee shall be $7 for each such rummage sale so conducted.

Class 2: For any second-hand dealer that does not qualify as a Class 1 dealer, the license fee shall be $400.

Section 10. That the existing Section 843-5 of the Cincinnati Municipal Code is hereby repealed.

Section 11. That Section 843-7, "Fence Required," is hereby amended as follows:

**Section 843-7. - Fence Required.**

No person shall operate or maintain a junk yard within 1,000 feet of the nearest edge of the right of way of any public street or highway unless the ordinary view thereof from such street or highway is substantially obscured by a barrier of natural objects, plantings or fence as defined in Section 843-1-F of this chapter.

The fence herein required shall be kept in good order and repair and no advertisement shall be permitted thereon other than the name of the person under whose name the license to operate said junk yard has been issued and the nature of the business conducted therein. In the event plantings are used to obscure the area, only those varieties of trees, bushes, shrubs or other plantings approved by the Cincinnati Park Board and listed in the office of the director of ~~buildings and inspections~~ planning and buildings or its successor department shall be authorized. Such plantings shall ring the area which can be viewed

6

from the public street or highway, to a depth of no less than five feet, in no less than two rows, in a staggered pattern, so as to provide the greatest possible concealment of the junk sought to be obscured.

No person shall operate or maintain a junk yard located either partially or completely within the limits of the city of Cincinnati, without a license issued pursuant to this chapter by the city treasurer, manager or city manager's designee, nor operate or maintain a junk yard without the required fence.

No fence required to be erected pursuant to the provisions of this chapter shall be constructed until a permit therefore has been obtained from the director of buildings and inspections planning and buildings or its successor department of the city of Cincinnati, and no permit shall be issued until complete plans for the construction of the fence, including materials, have been submitted to and approved given final approval by the director of planning and buildings or its successor department. No license to operate or maintain a junk yard shall be issued by the city treasurer manager or manager's designee until the fence has been completed and been given final approval by the director of buildings and inspections planning and buildings.

Section 12.  That the existing Section 843-7 of the Cincinnati Municipal Code is hereby repealed.

Section 13.  That new Section 843-8, "Notice Required," is hereby enacted as follows:

**Section 843-8. – Notice Required**

Every scrap metal dealer shall post a notice in a conspicuous place on the dealer's premises notifying persons who may wish to transact business with the dealer of the penalties applicable to any person who does any of the following:

(a)   Provides a false personal identification card to the dealer;
(b)   With purpose to defraud, provides any other false information to the dealer in connection with the dealer's duty to maintain the records required under division (B) of this section; and
(c)   Violates Ohio Revised Code Section 2913.02.

Section 14.  That Section 843-13, "Records of Transactions," is hereby amended as follows:

**Section 843-13. - Records of Transactions.**

(a)   Every scrap metal purchaser or processor who buys, trades, accepts or receives scrap metal shall keep at each place of business a legibly written or typed record which contains a description of the aggregate scrap metal in each load delivered

7

to that place of business. These records, titles and premises shall be made available to any law enforcement officer for inspection at any reasonable time during business hours, and such records and titles shall be kept for at least three years. In each such record the scrap metal purchaser shall list the following information:

(1)    The name and current address of the seller;

(2)    A photocopy of a valid driver's license, military identification or other government-issued identification which belongs to and is presented by the seller. If the seller is unable to supply either form of identification described in this paragraph the scrap metal purchaser shall not accept delivery of the regulated article(s) of material;

(3)    An inked impression of the right or left thumb of the seller, or a photograph of the seller and the merchandise being sold;

(4)    The seller's signature under a statement verifying that the seller is the rightful owner of the goods or is entitled to sell the article(s) or material;

(5)    The license plate number of the vehicle being used by the seller to transport the article(s) or material to the facility;

(6)    The name, initials, or other information identifying the individual entering the information required herein in the record or writing the receipt on behalf of the scrap metal purchaser;

(7)    A complete and accurate description including, where available, the serial number or other identification number, of any scrap metal article(s) or material that has been purchased or received by the scrap metal purchaser;

(8)    The date and time of the transaction; and

(9)    The consideration given in the purchase or trade transaction for the article(s) or material.

(b)    An officer, agent, or employee may record the necessary information listed in section (a) on behalf of the purchaser as required by section (a)(6) herein.

(c)    If a law enforcement officer has probable cause to believe that any scrap metal article(s) or material received by the scrap metal purchaser is stolen property, such officer shall notify the scrap metal purchaser in writing. Upon receipt of such a notice, the scrap metal purchaser shall retain the article(s) or material, until the expiration of 30 days after receipt of the notice, unless the scrap metal purchaser is notified in writing by a law enforcement officer that retention of the article(s) or materials is no longer required.

(d)    If a law enforcement agency receives a report that property has been stolen and determines the identity of the true owner of the allegedly stolen property, which that has been purchased and is held by the scrap metal purchaser, and informs the scrap metal purchaser of the true owner's identity:

(1)    the scrap metal purchaser may restore the allegedly stolen property to the true owner directly;

8

(2)   the true owner may reimburse the scrap metal purchaser for the amount the scrap metal purchaser paid for the allegedly stolen article; or

(3)   the true owner may recover the property from the scrap metal purchaser through an appropriate action at law.

(e)   <u>This section does not apply to any exemptions set under Ohio Revised Code Section 4737.043.</u>

Section 15.  That the existing Section 843-13 of the Cincinnati Municipal Code is hereby repealed.

Section 16.  That new Section 843-14, "Additional Requirements for Scrap Metal Purchasers and Processors," is hereby enacted as follows:

**Section 843-14. - Additional Requirements for Scrap Metal.**

(a)   Scrap metal purchasers and processors must purchase all scrap metal with a non-transferrable check, and withhold payment for the purchase of scrap metal for a period of two (2) days.  No purchases shall be made with any other form of payment.

(b)   Scrap metal purchasers and processors shall report daily the record of transactions, as described in Section 843-13, to the city police.  A scrap purchaser or processor may supply the record of transaction in the form of a tangible copy or an electronic copy.  The electronic copy may be submitted through an online investigatory system.

(c)   A scrap metal vendor shall provide to any scrap metal purchaser or processor his/her license issued pursuant to Section 843-3 of this chapter upon presenting a scrap metal item for sale.

(d)   This Section does not apply to any exemptions set forth in Ohio Revised Code Section 4737.043.

Section 17.  That Section 843-15 of the Cincinnati Municipal Code, "Appeals," is hereby amended and renumbered to Section 843-16 as follows:

**Section 843-1~~5~~6. – Appeals.**

~~A person served with notice of a violation of §843-13 has all the rights and opportunities for appeals of civil offenses as set forth in section §1501-23 through 1501-999.~~

(a)   <u>Any denial, suspension, revocation or denial of a reissuance of any license under this chapter is subject to appeal to the office of administrative hearings by filing a written notice of appeal within thirty (30) days after issuance of written notice by</u>

9

the city manager or the city manager's designee denying or revoking a license or denying a reissuance of a license.

(b)  A hearing shall be conducted by a hearing officer from the office of administrative hearings within thirty (30) days after such written notice of appeal is filed and a decision by the hearing officer shall be rendered no later than forty-five (45) days after the filing of the written notice of appeal. The enforcement of this chapter shall be stayed pending any appeal related to the revocation or denial of reissuance of a junk dealer, second-hand dealer, scrap metal purchaser or processor, or scrap metal vendor license.

(c)  Appeals of the hearing officer's decision may be taken to the Hamilton County Court of Common Pleas as allowed by law.

Section 18.  That the existing Section 843-15 of the Cincinnati Municipal Code is hereby repealed.

Section 19.  That new Section 843-15, "Special Purchase Articles," is hereby enacted as follows:

**Section 843-15. - Special Purchase Articles.**

(a) "Special purchase article" means all of the following:

(1)  Beer kegs;
(2)  Cable, wire, electrical components, and other equipment used in providing cable service, any utility service, or in home construction including, but not limited to, copper or aluminum coverings, pipe, housings, or enclosures related thereto;
(3)  Grave markers, sculptures, plaques, and vases made out of metal, the appearance of which suggest that the articles have been obtained from a cemetery;
(4)  Guard rails for bridges, highways, and roads; highway and street signs; street light poles and fixtures; manhole covers, water meter covers, and other similar types of utility access covers; traffic directional and control signs and light signals, metal marked with the name of a political subdivision of the state, and other metal articles that are purchased and installed for use upon authorization of the state or any political subdivision of the state;
(5)  Historical, commemorative, and memorial markers and plaques made out of metal;
(6)  Four-wheel metal carts, commonly referred to as "grocery carts," that are generally used by individuals to collect and transport consumer goods while shopping;

10

     (g)    Four-wheel metal carts, commonly referred to as "metal bossies," that are used to transport or merchandise food products that are stored in crates, shells, or trays;

     (h)    Copper downspouts and copper gutters; and

     (i)    Air conditioner units, as a whole, or in its components parts thereof.

(b)    A scrap metal dealer shall do all of the following with respect to each special purchase article the scrap dealer purchases or receives:

     (1)    Comply with the requirements of this section in addition to complying with the requirements of Section 4737.04 of the Ohio Revised Code;

     (2)    Take a photograph of each special purchase article;

     (3)    Obtain from the seller or provider of the special purchase article proof that the seller or provider owns the special purchase article;

     (4)    If payment is rendered for the special purchase articles, issue a check for the purchase of the special purchase articles;

     (5)    Withhold payment for the purchase of the special purchase articles for a period of two days after the day the special purchase articles are purchased; and

     (6)    If an asserted owner of stolen special purchase articles or that owner's agent provides proof of having file a stolen property report with the appropriate law enforcement agency, make records describing special purchase articles the scrap dealer purchase or received after the alleged date of theft of the articles, except that the scrap metal dealer shall withhold the name of the person from whom the special purchase articles were purchased or received and the amount paid for the special purchase articles.

Section 20. That new Section 843-17, "Severability," is hereby enacted as follows:

**Section 843-17. – Severability.**

In the event any section or provision of this chapter shall be declared by a court of competent jurisdiction to be invalid or unconstitutional, such decision shall not affect the validity of this chapter as a whole or any part thereof than the part so declared to be invalid or unconstitutional.

Section 21. That Section 843-99 of the Cincinnati Municipal Code, "Penalties," is hereby

amended as follows:

**Section 843-99. – Penalties.**

Whoever violates the provisions of Sections 843-3 through 843-9 or Section 843-14 ~~Section 843-3 or 843-7~~ of this chapter shall be charged with a minor misdemeanor ~~fined $100~~ per day for each day said violation continues and if convicted, shall pay all costs of

prosecution hereunder. Whoever fails to comply with or violates Section 843-13 is guilty of a misdemeanor of the third degree.  If the offender has one time previously failed to comply with Section 843-13, the violation will be a misdemeanor of the second degree. If the offender two or more times previously has violated or failed to comply with 843-13, the violation is a misdemeanor of the first degree. ; and it shall be the duty of the city treasurer, upon conviction of any person, firm or corporation to revoke the license granted hereunder immediately.

It shall be the duty of the city manager or city manager's designee, upon conviction of any person to: upon a first conviction, suspend all license(s) issued under this chapter for a period of thirty (30) days, and provide written notice to the license holder of such a suspension; upon a second conviction  in one year, suspend all license(s) issued under this chapter for a period of ninety (90) days, and provide written notice to the license holder of any such suspension; and upon a third conviction in one year, revoke all license(s) issued under this chapter, and provide written notice to the license holder of such revocation.  Any appeal of the above stated suspension or revocations shall follow the process set forth in Section 843-15.

Operation of a junkyard without a license or in violation of this chapter shall subject such persons, firms or corporations engaged in such operation to petition for injunctive relief for the cessation of such operation.

Section 22.  That the existing Section 843-99 of the Cincinnati Municipal Code is hereby repealed.

Section 23.  That the existing Section 843-99-B, "Penalties," of the Cincinnati Municipal Code is hereby repealed.

Section 24.  That Section 843-3(c) and the amendments to Section 843-5 contained herein shall expire twelve (12) months after the ordinance goes into effect.

Section 25.  That Council shall have the option to extend the effective dates of Section 843-3(c) and the amendments to Section 843-5 contained herein, pending an evaluation of data provided by the City Administration.

12

Section 26. That this ordinance shall go into effect from and after the earliest period allowed by law.

Passed: _____, 2012

_____
Mayor

Attest:_____
Clerk

_____

New language underscored. Deleted language indicated by strikethrough.

13